May it please the court Steve Sadie for Mr. Nelson. Four men in a car a gun under one seat no furtive movements to indicate anybody placed it there. The occupants deny knowledge of the guns presence. This case is about two forms of expert testimony. Mr. Nelson had a gun, had a glove in one pocket, and after a motion in limine was litigated, the officer was allowed to testify that people who possess handguns illegally will oftentimes wear either one or two gloves. What time of year was it? What time of year was this? This was in April in Portland. Pretty nice now. It's July in Portland, much different. The arresting officer by being allowed to testify... Maybe he needed Johnny Cochran. No. Did the glove fit? Yes. If the glove could not have expert testimony, you must reverse. And I think it reverses on three basic tests under 701. It flunks every single one. The first test is was the testimony based on sufficient facts? It wasn't based on sufficient facts. It was talking about strictly anecdotal testimony, going to conferences, and it was all related to gangs, and Mr. Nelson, the testimony is, is not a gang member. There's no reliable principle. This is not like the Hankey case, where the officers were able to testify about this particular gang having this particular characteristics, and this person is a member of this particular gang. Nothing like that was put into this case. But the third is the most key. And the third part of 701 is, does the testimony apply to the specific facts of this case? The government, if you read through the qualifications, it was in the Roche and Lemony, it was all about gang conferences, gang unit, the conversations within the gang unit. But at a key part of the cross-examination, at Excerpt of Record 58, the fact that someone is in a database as being associated with someone in a gang really doesn't have any value concerning this phenomenon. Correct. Officer, answer is correct. So the testimony during the hearing was that there is absolutely no connection between the testimony that he was the so-called expert testimony about the glove and the specific facts where we have an individual who is not a gang member. Was the testimony that only gang members use gloves to conceal their relationship to guns? The character testimony, the expert testimony, yes. I would note on Excerpt of Record 69 is where the government tried to save the situation, but I think unsuccessfully. Because gloves, the question was, are you saying that it is exclusive to documented gang members only? No, I'm not. Newsflash, sometimes criminals wear gloves when they're carrying a gun, but it's not focused on the facts of this case. Let me ask you a question. Was that a left-handed or a right-handed glove? The testimony was that the glove could fit on either hand, but that it was in the right-hand pocket, and they also deduced testimony that Mr. Nelson signed a property receipt with his right hand. The glove could fit on either hand? Yes. Where do you get those gloves? Sometimes gloves are worn so that any powder from a gun firing doesn't get on a person's hand. It fires the gun. Were any tests done on this glove? There were no tests. The question was asked about whether the gun was tested to see if there were any. The glove is really sort of a collateral matter, really, in this case, isn't it? I mean, the glove was there, but the gun was under his seat, the seat that he was occupied. And the testimony was that the positioning of that gun under the seat was such that the movements of the car prior to his being stopped by the police were such that the gun would have flipped over or something if it had been there during the chase. So suggesting, circumstantially, that the gun was placed there as the car was coming to a stop, and it was under the seat of the defendant. That's the evidence that really ties him into that gun. I think that is obviously the second point about the propriety of that type of evidence that was given about when it could be tested, when it could have happened, and that that was, in effect, scientific evidence that was provided under the rubric of lay testimony in violation of this Court's ruling in Hannah. But the key is that this is incredibly unfair and unreliable to have somebody testify that because you have a glove and you're in the proximity of firearms, that you, therefore, possess the firearm. That's what the key testimony was, and that's what the case was. And here we have, you know, what else? Okay. You've got four minutes, and you've got one out of three points done. I will move on. It allowed the admission of hearsay evidence, hearsay about an informal survey of people in his gang unit. It allowed opinion evidence, and it allowed him to opine, which gave him an aura of authority that he would not otherwise have had, which I believe all were unfair in this very circumstantial case. On the question of the use of the testimony about whether it would flop around and how it got there, we are not arguing about whether the officers could testify that it was leaning. We're not saying that he couldn't testify about seeing the car swerve. The question is, is it scientific evidence? Does it have to be based on more than what Officer Harris says? I never touched it, and I looked at the gun for a few seconds, and makes the conclusion about what must have happened and testifies that it could not have happened after the car – it could not have been placed there until the car stopped. That is a huge leap. That is a – and the testimony from the engineer was you have to make measurements. You have to try to reconstruct the scene. You have to weigh things. You have to measure force. None of those things happened. Notwithstanding that, they were able to testify that it was virtually impossible for something to have happened that, in common sense, it could have been knocked up there. It could have been held up there. The fact that the non-expert testimony occurred, the fact that there was a photograph where the top was cropped as evidence that there's nothing that could provide a scientific basis, the third aspect of the lay testimony was not there. Nonetheless, they were allowed to testify with that type of authority. We've raised a sufficiency question because – and I think that would need to be reached under Berks if there's any concern regarding the – either of the admissions of the expert testimony. And that basically comes down to junk sociology plus junk science does not get you over the – The second one about the position of the gun, I thought that was not let in as expert testimony but as an opinion, a lay opinion. Lay opinion, the qualification is that it is not based on scientific, specialized, or other types of specialized knowledge. And that's what is occurring here, and that's what the engineer was saying. In order for you to come to a conclusion about how it got there rather than where it was, you have – that is scientific type of evidence. You have to do the measurements. You have to know weights. You have to know exactly how it's set. They took no precautions about that. You're saying it should have been expert testimony, and there wasn't. The lay opinion is not a valid opinion? I don't believe that it is not a valid lay opinion because it involves scientific evidence, and it would not have passed the threshold for an expert to testify. So they were able to put on expert testimony without complying with the Federal Rules of Evidence. Well, you say the picture was cropped. I have a picture here, and just the bottom of the grip is just this little piece. Was it cropped? The photograph cropped? I believe the picture that is in the excerpt of record is the same, black and white, as the photograph that was admitted at trial. And the point is that the expert testified that from that – there wasn't adequate reconstruction. There was two photographs, incomplete, difficult to tell the angle. You can't make a scientific conclusion. But the officer wasn't relying on the photograph for making the statement about what he believed would happen to the gun in view of the movements of the car. He was looking at the gun itself at the time and then took a photograph just to preserve that evidence. The – a different officer took the photograph, and the testimony was he never – first, Officer Harris never touched it, looked at it for a few seconds. That's what we're getting, this scientific evidence based on I looked at it for a few seconds. I didn't think it was a scientific opinion. The basis for being able to make a determination about movement, I believe, was put in by the engineer that in order to testify to that type of conclusion, they could have testified about the weight shift. They could have testified about where it was found. It was drawing that ultimate conclusion that was for the jury that invaded the province of the jury and provided testimony that should have been excluded because it was, in effect, expert testimony. Thank you. Thank you. May it please the Court, Cam Barker for the United States. I'll start with a third issue here, the admission of the officer's lay opinion under Rule 701. The officers did not testify as Rule 702 experts, but offered their lay opinion testimony. The way Rule 701 is set up is that for a lay witness's opinion testimony to come in, it has to be rationally based on the perceptions of the lay witness, helpful to the jury's understanding of the issues in the case, and not based on scientific knowledge or other expertise. Here, the district court properly determined that the officers personally observed the gun in three dimensions and head-on. Officer Derry actually removed the gun from under the seat, and Officer Harris testified that he looked at the gun. He saw under the seat as far as the gun could go. He testified about the specific position of wires under the seat and what would and wouldn't have held the gun in its upright position. And the district court properly determined, and did not abuse its discretion, in determining that the officer's assessment of how that gun would have stayed upright during the car's driving was something that was within the common, everyday understanding of lay witnesses, and their understanding, their opinion testimony was not based on scientific knowledge. Indeed, at page 8 of the reply brief, the defendant says that the officers could properly have testified that the gun's position was precarious. Precarious is a word that involves some inference about what it would take to knock the gun over. Here, the officers just testified that the gun's position was precarious, that it was a genderly-arrested gun, and that it was such that even a hard door slam would have knocked the gun over, much less the car's forceful and erratic driving during the prior trial. I have the impression it was sort of wedged into something. Could you repeat that question? I said I have the impression that it was sort of wedged into something. There was questioning at trial from the defense about whether certain cords under the seat wedged the gun into the seat, wedged the gun into that position. But officers testified that they examined those cords and that the cord did not wedge the gun into position. And Officer Derry, who removed the gun from underneath the seat, testified that when he did so, he met no resistance, that the barrel of the gun had room to move left and right, forward and backwards, and that nothing wedged it into its position. The only thing keeping that gun in its position was the tip of the magazine resting on a bracket hanging down from underneath the seat. There's been some attention paid to the word cropped in the photographs. It's true that the photographs of underneath the seat don't show the point of contact between the tip of the magazine and the bracket underneath the seat. And that is not because it was affirmatively cropped after the photograph was taken, but because the photograph, apparently the camera wasn't able to get the right angle. There's no evidence that anyone then went in and cropped the photographs. I'd like to move to the... Well, was the photograph taken at a later time to show that bracket? The photograph was taken at the scene before the gun was moved. We don't see the bracket here. That's correct. The bracket's not shown in this particular photograph. Was the photograph taken of the bracket some other time? Unfortunately, no. The defendant's car was let go, and that was unavailable for trial. However, there's no evidence that the defense expert couldn't have relied on the two officers' testimony that there were a few millimeters of the gun magazine touching that bracket. So moving to the defendant's second point. So what happened to the car? My understanding from the record is that McPherson, the car's driver, left with the car and was subsequently disposed of it. I think he sold it. It was at least a 20-year-old car, so that doesn't strike me as so unusual. And all those questions would, again, rise in the normal course of the police procedure. As to the second point about the officer's testimony, that gloves are used in gun possession crimes, Officer Derry testified at the preliminary hearing, the pretrial hearing, that there was nothing gang-specific about the use of gloves in gun possession crimes. He testified that his experience in gun cases where gloves were used involved both gang cases and non-gang cases. And indeed, at the pretrial hearing, the defense recognized that, quote, gang membership is just one area where gloves are found, end quote, and also that the use of gloves in gun crimes, quote, could be any case, end quote. So the district court properly determined and did not abuse its discretion in finding that. Well, was the glove tested for any gunpowder residue? The glove was tested, and there was no evidence of gunpowder residue on the gun, indicating that the glove had not been worn while the gun had been fired, if it had been fired at all. That's correct. Finally, as to the sufficiency of the evidence, this was not a case where the defendant was convicted merely for proximity to a gun found in a car. Rather, here there was additional evidence. But without these two pieces of evidence we've been talking about, there probably wouldn't have been sufficient evidence. I think we need to narrow down what we're talking about here. Even if the officers hadn't offered their lay opinion that the forceful driving of the car would have tipped the gun over, the officers still would have had the fact evidence here that Officer Harris testified that the car was swaying from side to side. It changed lanes violently enough that the weight of the car shifted, that the driver was hitting the brakes hard. Derry testified to the same jerky and abrupt movements, head swaying back and forth. And even the car's driver, McPherson, testified that he made dramatic and dangerous lane changes and was slamming on the brakes. So if you're asking about the harmlessness of any error, ask the officer's lay opinion. We do think that it's more probable than not that the case was not materially affected by the lay opinion that the precarious position of the gun was such that a hard door slam with a car's forceful movement would have tipped the gun over. The fact evidence allowed the jury to make that same conclusion. As to the glove testimony, criminalist Tina Willard, who was one of the government's witnesses ---- You're just speculating now. You're just speculating now. Well, I think that if I'm understanding Judge Reinhart's question, it's about the harmlessness of any error. And that requires ---- No, it really wasn't. What I was really saying is if you excluded these two, there probably wouldn't be sufficient evidence beyond a reasonable doubt. Because none of the officers said ---- all said he never moved to lean down to put in the gun. They never saw any movement on his part. So there would have to be at least a reasonable doubt as to how the gun got there if you didn't have these two pieces of evidence. I think if it's ---- if the gun wasn't in the precarious position, that's true. But here, the testimony, even putting aside the opinion test, the lay opinion testimony, was that the gun was in a precarious position underneath the seat. And that evidence allowed the jury to make ---- to reasonably rule out the possibility that the gun was put there before the chase that evening. From that, that narrows the location, the way that the gun got in the car. Well, I could just as reasonably rule out the possibility that he put it there when the officers observed him the whole time and he never leaned down to do it. That's correct. But if the question is which of the car's four occupants placed the gun under the car, the evidence that there were no furtive movements in the car and that there was an officer observing the car at all times after the chase ended and during the traffic stop ---- No, I would say you have a good, decent argument that that's what must have happened. But they also have a good, decent argument without the other evidence that he was not the one who did it and it could have been there, despite the jury's feeling that, you know, it should have toppled over. I don't think you'd have a case beyond a reasonable doubt without these two pieces of evidence. Well, again, I disagree if we're talking about the pieces of evidence that the officers, specifically the officers' lay opinion testimony, as opposed to all of their testimony about the car's forceful movements and about the gun's precarious position. And if we're talking only about the officers' testimony, that there is a practice of wearing gloves in gun possession crimes as opposed to all testimony about the gloves. So that disputed opinion testimony and that disputed expert testimony is quite small. Adding that in even further strengthens the sufficiency of the evidence. I mean, the car was driving so forcefully and the gun was so precariously positioned that the jury could reasonably rule out a source of that gun other than someone in the car putting it there after the chase. The evidence was that there was no way to get that gun from the back seat to underneath the front seat. Officer Derry got down on hands and knees in the back seat and looked under the back seat and testified there was no way for that to happen. The officer, Derry, also testified that McPherson was short, 5'3", was a full-size Cadillac sedan, and the gun was found on the right side of the front passenger seat. The evidence of no furtive movement shows that it couldn't have been placed under that front passenger seat by anyone in the car. No, no, the two theories would have to be that it was there the whole time or that he had put it there. And you can make a good argument that neither one is proved. Right. Well, I do think that that's critical. The finding that it was placed in the car during the car ride is clearly critical to the government's case. So I agree with you on that point. The evidence here, though, allowed the jury to make that conclusion and there was no irrational conclusion in the jury. I'm sorry, there was nothing irrational in the jury's conclusion here. That inference followed clearly from the evidence of the gun's position and the car's forceful driving. Unless this Court has any further questions. And we don't have any pictures of that bracket? That's correct. It appears that the officer who took the pictures did not take a picture of the point of contact between the gun's magazine and the bracket. However, that wouldn't go to the admissibility of the lay opinions of the officers who did observe that point of contact in person and in three dimensions. It's perhaps relevant to a claim that's not raised on appeal, but it's not relevant to the admissibility claim. Well, if you had a bracket there, wouldn't that prevent the weapon from flip-flopping with lane changes? The evidence is that there was a bracket hanging down from the seat and the magazine of the gun was contacting it. The officers testified that the point of contact was so small, just millimeters, and that the gun's position was unsupported by anything else in the car, such that even a hard door slam would have jarred the gun and knocked it to fall flat to its side. And that's something that the officers were uniquely offered or uniquely situated to tell us about because they saw the gun in person. Well, I mean, it was about that size over there. I mean, that's enough to hold it. It did hold the gun up while the car was standing still. That's right. It was only in the presence of a jarring motion. Well, it held it up while it was standing still. If someone were sitting in the seat, it'd probably hold it up too because you've got that downward pressure. Without being there in person, I mean, I'm not able to testify or offer you any more information than what the officer said, which was that the gun was so precarious that a hard door slam and definitely the car's erratic and violent movement, as the driver of the car testified, dangerous and dramatic lane changes, would have knocked the gun over to its side. That evidence, along with the other evidence of the glove possession, the evidence of the position of the gun, the right-handedness of the defendant, the driver's statement that there was probably a gun in the car, which cuts against his interest but wouldn't cut against the interest  We urge this Court to affirm the conviction, unless the Court has any other questions. We'll rest on our briefs. How did the right-handedness of the defendant play into this? It's one small piece of circumstantial evidence in the bigger picture. What did it show? What did it show? He was right-handed. It's consistent with the evidence that the gun was found under the right side of the seat that he was sitting in, and it's consistent with the evidence that the single glove was found in his right jacket pocket. So it's one piece of circumstantial evidence that shows that it's evidence that's consistent with the defendant. Oh, a left-handed person can turn down and put it in the same place. It's more likely that a person who is right-handed would have maneuvered the gun with his right hand than with his left hand, and it's only in that sense that this evidence is supporting the jury's verdict. Yes. Well, I'm left-handed. I'll have to think about it. Thank you. The rest of them are briefs. Thank you. We'll give you a minute. Go ahead. Thank you, Your Honor. A couple of just real brief factual. I think that counsel misstated in saying it was the defendant's car. It was the car that belonged to McPherson. McPherson drove off in it. McPherson is also the one who indicated, although we disputed at a trial, some knowledge regarding a gun in the car. Say that again. What did you just say? McPherson disputed what? He said the officer testified that he said there's probably a gun in the car. And he, at trial, denied having said that to the officer, but it shows that he's the only person who indicated any knowledge of the gun. The occupants generally denied knowledge of any gun in the car. There's also no chase. The testimony is clear that they put on the lights, they pulled over, they were unmarked, did not have the lights on. Once they put the lights on, there was no chase. There's also stating that there was nothing gang-specific about the testimony of Officer Derry. You just have to look at the qualifications. When the prosecutor is taking him through his qualifications, it's gang task force, gang conferences. It was the whole tenor of the qualification related to gang-specific. And the testimony of Willard did nothing to connect the characteristic and the hearsay type of characteristic that was being asserted by Officer Derry. There was nothing in Willard's testimony except that a glove can block certain types of substances. But at the same time, she also said somebody had handled the glove because there was a positive white response when they tested it, just that they were not able to pull any fingerprints. So that, I think, has no relevance to the question of the expert testimony that was allowed. Thank you. Thank you, Your Honor. The matter will stand submitted.
judges: Pregerson, Reinhardt, Strom